22-11065, Jesus Navarro Guadarrama v. the Attorney General. Mr. Stolar here for the petitioner, Mr. Zaidi here for the respondent. Mr. Stolar, whenever you're ready, no hurry. Good morning. My name is David Stolar. I'm a private attorney in Orlando, Florida, and I represent Mr. Navarro Guadarrama. May it please the Court. So the issue before the Court is whether discretion exercised over the scope of many types of forms of relief in the Immigration and Nationality Act is discretion. In other words, is all discretion the same, or do some discretions have different ways of applying different factors to figure out, depending on what the particular form of relief is that is available, figuring out whether or not to exercise that discretion? And for a long time, the Board of Immigration Appeals has said yes. In certain cases, straightforward application for adjustment of status, as I believe we have now. So can I ask you about that? I think I agree with you in the abstract that the discretion that the Attorney General exercises with regard to, I don't know the statutes nearly as well as you do, but 1255I is a little bit different than the discretion that's exercised for 1182H. So I think that's right. But keep in mind that the 1182H is a waiver on top of the 1255I. I understand that. But yes, when you are adjudicating an application for adjustment of status without that waiver, there is a standard. So I understand that those two things are different. And what the argument here is that the agency cited and seemed to rely on the standard for waiver in applying the, when it really said it was applying for just the adjustment standard. That seems to be what the argument is, but go with me for a second. So here's what I understand the difference to be. ARIA, which seems to govern the adjustment standard, says where there is no adverse factors, we are ordinarily going to grant relief because there's nothing to countervail all the good stuff. Correct. But where there is countervailing factors, where there is adverse factors, those have to be countervailed by positive factors. Correct. Okay. And then, so what seems to be the two differences under that regime from the 1182H regime are these. One is the sort of, I'll call it the presumption, but at least the ordinary routine of not there. And second, that even if there are adverse factors, they generally in the 1182 context, 1182H context, will not have or not be criminal in nature. Right? Those are the two big differences. But with 1182H, there's a general proposition. I'm sorry, under 2255I, generally it's not going to be criminal. Exactly. Okay. So those seem to be the two big differences in how the agency should analyze its discretion under 2255I versus how it analyzes it under 1182H. Is that fair? I think that's fair. Okay. So skipping over the jurisdictional issue for a moment, which I know some people here want to talk about, including myself, it seems to me that in this case, well, in the abstract case, I think I agree with you. But in the facts of this case, because A, there are in fact adverse factors, and B, not just adverse factors, but there are adverse factors dealing with what I think is pretty significant criminal history, then we really are in the boat of not what distinguishes ARIA from Mendez-Morales or Morales-Mendez, but in fact we're really in the same position of just taking the adverse factors, including a criminal one, seeing if they're countervailed by positive factors, and then making a determination, having weighed them, of whether the attorney general should exercise his discretion. Where am I wrong on that? And if the Board had said that, I would not be here. But what the Board did was the Board cited its provision that it put in Mendez-Morales saying we have to take a look at the suitability of whether the person would be a good matcher in the United States. Language taken precisely out of 1182H. Right? And there's a reason why. There's an adverse factor there. And so that standard that the Board put forth, that's why they apply that. There's something in that case that's not in a matter of ARIA. So what, I guess, to Judge Luck's question, what is that something that's in that case but not here, if we hear we have adverse factors of a criminal nature, so the ordinarily presumption pursuant to the language of ARIA is not going to apply. Right? So aren't we back substantively into the other bucket? In theory, yes. Right? The idea being that discretion overall, regardless of the form of relief, we're trying to balance equities. Take the positive, take the negative, and try and figure out is this person, you know, is the bad outweigh the good or is the good outweigh the bad? That's how I always explain it to my clients when we're sitting in my office. So, but there are specific factors, there are specific considerations that the Board has said are important when we're dealing with specific forms. Except ARIA made pains to say we should not list all of these factors. No. It doesn't say that? No, I agree. He's agreeing. Okay, sorry. I agree. So ARIA said we shouldn't list those things, we shouldn't make guidelines on this, we should just consider it all. Right. So how is that inconsistent with considering it all? Because then discretion is discretion. And all those other cases that talked about the specific factors that you apply in a 212C case, a 212I case, I'm sorry, 1182AI, 1182C, 1182H, that means nothing then. It's just discretion, right? It doesn't matter if the person is outweighing. Except that, but counsel, except that in Mendes-Morales, I always forget the footnote on that, I apologize for that. In Mendes-Morales, the Board said, and in fact equated 1182C with 1182H in deciding how the weighing should go. In other words, it used, I understand it said we shouldn't cross-pollinate, but in the course of saying that, we are going to cross-pollinate because the analogy works for a lot of these because the end result is here are some good stuff we consider, here are some bad stuff we consider. We weigh them together and then decide if this is the kind of person we want to extend grace to. Sure, then why not cite to the case for the proposition of this is a standard application for adjustment of status. We're going to weigh the good against the bad and figure this out. Why cite to Mendes-Morales, number one, and then the Board goes on to say that this is an overall, a generalized discretionary determination about how we weigh the good and the bad. Well, if it's the same thing... Don't we have to take the Board at its word? In other words, you did the right thing here. In other words, you saw an error and you sought reconsideration. And I think we're all the better for it because we now have the benefit of the Board saying not just a straight denial, but it said to us, hey, we cited this thing just for the general understanding that we weigh. And we did that weighing here and this case did not, didn't meet the two big differences with ARIA. There was not a presumption case and this case had criminal history as part of the adverse factors. And so the weighing is essentially the same. Well, the thing is, I see it as different because if the weighing is essentially the same, then why would the agency provide specific factors to consider when dealing only with discretionary analyses as they apply to these differing factors of adverse factors? Where is it culturally from removal? It makes no sense to say that there's this standard, this standard, and that standard, but everything's all the same and we can just interplay all these things, but we don't interplay these things. You know, the Board is talking out of both sides. When you say specific fact, you've mentioned this a couple times now. I'm just having trouble understanding how Menendez-Morales says that it's specific factors. The way I read the, I'll read it directly there, is the Board said that these are some factors we consider such as this or that. Not that you must consider these things and these are the only things you have to consider. It's not an inflexible standard. I will say that. Well, I'll read you the key sentence. So this is at, I'm looking at the Westlaw version, so page five of the Westlaw version. The favorable considerations include A, B, C, D, and E. It's not you must consider these things and only these things and if you don't, it's error and there's nothing else to consider. Right? Correct. Yeah, like I said, it's a flexible standard. So isn't ARIA also a flexible standard? I think all of these are flexible standards, but they're standards with specific ideas of what we're dealing with. We have to take the factors that we want to consider and make important, depending on what the underlying nature of that waiver is. That's what Menendez-Morales says as well. Madhav Rai doesn't handle this kind of case. We've got an adverse factor in the form of whatever crime or offense is necessary in order to get the waiver. So we have to factor that into our discretionary analysis. So if there is something that requires an H waiver, here's how we do it. If there's something that doesn't require an H waiver, here's how we do it. Sorry. No, no. If the board hadn't cited the wrong case, but its analysis had been substantially the same. I've got a big problem. So this really boils down then to the fact that initially they cited the wrong case. You move for reconsideration. They explain themselves. So the substance of the analysis you don't really contest. It's the citation of the case which you think indicates just kind of wrong thinking. Let me refine that a little bit. And this gets a little bit technical. The board's decision on appeal, so the judge I think did the right thing. Judge says he's got this marijuana conviction. You need a waiver because this is before Saeed came out. You need a waiver. Here's what I'm going to do. Here's what I'm going to apply. Great. The board applies the same standard without saying that he needs a waiver. They never reach the issue. Okay. They say fine. We're going to deny. And at the time, because I think it was March 8th, that was the date the board's decision came out. On appeal, I'm sorry, on the motion for reconsideration, by the time the motion for reconsideration was decided, I'm sorry, before we filed it, Saeed came out. So then we said, look, you don't need this waiver. It's clear as day now. And they say, well, it's the same standard. It still applies. It doesn't matter. It's this over, Mendez-Morales, from the board's point of view, is this overriding principle kind of like matter of a ride. You know, balance the factors, positive and negative, and whatever goes, goes. As if what they said in matter of Mendez-Morales that there's a significant adverse factor, and for that reason we must apply this different standard that I would imagine that if that's true, if that's what they really meant, then when you take that adverse factor away, which Saeed did, they would say something different in their analysis. Indeed, I thought what they should have done is remand the case back to the immigration court. I know, but the adverse factor, it still would count as adverse factor. What it doesn't do is it doesn't preclude you don't need a waiver anymore because of Saeed. But the marijuana conviction is still an adverse factor. And the other conviction, which we don't have to say out loud, was also an adverse factor. Significant. Right. Right. So I go, I think the way Judge Newsom phrased it is exactly right, which is if we're just talking about a bad citation and the weighing is the same weighing they would do for this application, for this exercise of discretion under 2255I, then what are we really talking about? I think that the weighing is not the same. I think that's the legal issue here, back down to the jurisdictional thing. That's the question of law that pops up. If the board says here's how we do it in this case and we have facts that allow us to go this route, why is the board not applying and citing to that authority? Because I agree, if they had said matter of awry, quoted the normal language that matter, they put in matter of awry in their decisions, then I would have a problem. Let me ask it this way. Sure. If everything in the original BIA order was the same except for the citation to Menendez-Morales and instead it was to matter of awry, but every other word was exactly the same, would that be an error? Well, it would have been because at the time he needed an H waiver. That's the, again, it goes back to the initial. But they skipped over that. But, counsel, they skipped over that. They said we don't have to decide that. We're going to use our de novo power and just decide the discretionary issue because even if he got the waiver and even if he was eligible for adjustment, we will exercise our discretion not to give grace in this case. My time is up. May I respond to it? Yeah, please. Perfect segue into Blank v. United States v. Attorney General, a case from the 11th Circuit here, where there was this issue regarding voluntary departure. There's two kinds, pre-conclusion, post-conclusion. Apparently there was a procedural error that the judge didn't allow the gentleman to apply for pre-conclusion. He applies for post-conclusion. The judge denies it as a matter of discretion. And the board says, look, you've got a procedural problem, but we don't care. It doesn't matter. We would not have exercised discretion anyways. Okay. There you go. So the 11th Circuit said the procedural error doesn't matter because the board, the agency, did the right thing. They applied it both ways and there you go. But the board's decision doesn't make clear. It keeps citing the same case without the requirement that the gentleman apply for a waiver. Okay. Very well. Thank you so much. You'll have your full time on rebuttal. All right. Mr. Zaidi, let's hear from you. Good morning, Your Honors, and may it please the Court. Imran Zaidi for the Attorney General. This appeal concerns the denial of relief as a matter of discretion, and both parties here agree that that review is generally unreviewable. Now, the single narrow question before the Court is whether Petitioner has presented a colorable legal question that this Court can review. Now, given the very narrow scope of this question and this appeal, the government just has a few basic points today to make, and then beyond that is happy to answer any of this panel's questions. Now, Petitioner's challenge here at its core is that the board here made a legal error in citing the wrong discretionary standard, which is a matter of Mendez and a matter of CBT, instead of citing a matter of Arai. This is not a colorable legal claim for a few basic reasons. Let me ask you this. When you say it's not a colorable legal claim, I mean, it is a claim of an error of law, right? Applying the wrong standard, we've said many times, that's an error of law that we have jurisdiction to review. And then maybe on the merits, it's a loser. But are you making a jurisdictional argument now or a merits argument? It's a very good question, Judge Newsom, and I think this is what the supplemental briefing request got to. And I use the word – I should say that I think different attorneys in my office even think of this differently. I was not the one who briefed this case. I think I do think of it the same way, which is that colorable just means, and as this Court has described it, some possible validity. So it's basically, it is a legal question, and it would be reviewable even under 1252A2D if there was a wrong standard applied. Colorable just means there wasn't a wrong standard applied. You both agree in briefing, and everyone seems to agree, that, A, applying the wrong legal standard is a legal issue. B, that if the – that applying the wrong legal standard is a legal issue. B, that if the Board had applied the wrong precedent, that would be a legal error. But you – where you are battling is where you're battling right now, which is we don't think this particular claim is colorable. Let me ask it this way. Forget the facts of this case. In the abstract, if the Board had applied the analysis under Menendez-Morales, which applies to 1182H waivers and not the analysis under 2255I for adjustments of status, if the Board had done that in the abstract, do you agree that that would at least be colorable if someone came to us and said they applied the wrong discretionary framework? I would not agree with that, Your Honor. Why is that? And that's because it is not, and I think some of the questions that you and Judge Newsom have asked to get to this point, it is not a different analysis. Well, I think it – here's why I ask this, and here's why I ask the first questions I ask, because it actually does seem to be a different analysis if the facts of this case were a little bit different, and that may be where we need to talk. But in the regular mind-run case, an adjustment of status individual, A, generally is not going to have adverse factors, or B, if he or she does have adverse factors, they're not going to be criminal convictions. And I'm not just making that up. That's directly from Menendez-Morales for why a riot doesn't apply to 1182H cases. I mean, even in Menendez-Morales, the Board said this. I even bolded it in my notes. This approach, meaning the Arai approach, has no application to relief under Section 212H of the Act. How can we say that's not colorable where the Board did exactly the opposite of that, which is apply the – not apply this approach to Arai? It is because, and Judge Lug, I believe you mentioned this already when questioning my colleague, it's because what the Board is specifically describing for matter of Arai is that sort of presumption, right, that sort of light presumption that where there are no negative factors, then you will ordinarily grant relief as a matter of discretion. That's the principle from Arai that in matter of Mendez they were saying this is why this is kind of different. But that obviously doesn't apply here. And in any case – Yes, but this is Judge Lug's question. It might not apply here, but only because there are adverse factors of a criminal nature. Sure. Right? But so his question is in the abstract, in a different case that had different facts, wouldn't that be a colorable claim of legal error over which we would have jurisdiction? So I just worry that we're like mushing together the merits of your argument and jurisdiction. Well, I hope this answer is good enough, Judge Newsom, but I don't disagree with you that there is a little bit of mushing going on here. And that's why it's hard to answer Judge Lug's question that in the abstract if this is what was happening, independent of the facts here, would that be a colorable legal error? And it wouldn't because you can't escape the facts because the only thing that is required in a discretionary analysis, in any relief context, is the balancing of factors. And that's, of course, going to get to what are the factors in that particular case. But let me ask you this, maybe from a different perspective. Ordinary civil litigation, when we're trying to decide if we have subject matter jurisdiction, we just assume that the plaintiff is right. Okay. Now do we have jurisdiction? Does this plaintiff have standing? Do we have subject matter jurisdiction? Why wouldn't we do it the same way here? Why are we, like, peeking through to the merits to determine whether or not there's jurisdiction? That just seems sort of backwards to me. Well, Judge Newsom, let me come at this a different way. I don't think that you're peeking through to the merits. I think what I'm saying is also that the basic core analysis that is required here is to balance factors, positive and negative. And I guess one of the issues that I'm taking with Judge Lug's sort of premise is that you have a different analysis for 212H versus 1255I. All that is required in both contexts is that you are balancing all the same general factors. And I'd submit Petitioner or my colleague here has not described any factors that are different in these different contexts that you would need to do differently in those different contexts. You are still looking at negative factors. Counsel, I'm having trouble squaring that with what the Board said in Menendez-Morales. And I'll read. I gave you the sentence. Let me read the paragraph because I think it's very relevant. We do not find applicable is what we do not find applicable is the analysis for determining whether adjustment of status under this statute is warranted in the exercise of discretion as set forth in Matter of Array. There the Board ruled generally that where there are adverse factors present, favorable factors such as family ties, hardship, length of service, et cetera, will be considered as countervailing factors meriting a favorable exercise and that in the absence of adverse factors, adjustment will ordinarily be granted. This approach has no application to relief under the waiver statute. A waiver of admissibility under that statute necessarily involves at least one adverse consideration, specifically a criminal conviction or activity constituting the ground for exclusion under waiver. Thus, there can be no presumption that relief is warranted in the exercise of discretion. Further, this criminal conviction would usually be more severe than any adverse factor present in the application for adjustment of status. That seems to be setting up a different framework that the Board itself is saying does not apply in the waiver context. And so I don't see how the reverse of that wouldn't also be true, that waiver wouldn't necessarily apply in this context. Again, in the abstract, not under the facts of this particular case. Right, Judge Luck. And I think, again, I'd say the in the abstract question is just hard to come at because you are looking at what factors are involved in any case. So I think maybe a good way of answering this is in the matter of Marin, you did have cross-application of what would, under your sort of premise and under my colleague's argument here, would be different standards. And there it was, I believe, 212C relief, which is a different criminal conviction. Right, but in Menendez-Morales, the Board there said that 1182C has a lot of overlap with 1182H, and they actually used that as an analogy for the balancing test. Here, the Board explicitly said that this is not an analogy that we would use and we generally don't cross-pollinate. That's right, Your Honor, but in matter of Marin, I think maybe you're mistaking the two different cases. Matter of Marin actually brought the standard from matter of Arai. The specific argument there was that the immigration judge had cited matter of Arai in this different criminal context of a 212C waiver. And the Board there said we're just citing this matter of Arai case for the general proposition that you balance factors in a discretionary analysis beyond that. We're happy in that context in citing it for that proposition to apply it here. So it is the cross-pollination that we would be most concerned about if there were two truly substantively different standards. There simply aren't. Or another way of putting it is when you are just citing, and maybe this is the easiest way to describe it, if you are just citing a Board's decision for the simple general proposition that in a discretionary analysis, you balance positive and negative factors, then that is always going to be allowed, and that's what happened here. That's what matter of Marin said again in that different context. It's what this Court did in a decision, this Court and the Board two years ago in a decision called Viculin, which we cite in page 24 of our brief, where it was matter of CBT was cited, even though it was addressing adjustment of status as a matter of discretion without a criminal waiver applicable. And Judge Branch and Judge Luck, I believe you were on that panel. You would never have batted an eye at matter of CBT having been cited in that ostensibly or allegedly different context. I guarantee Petitioner didn't even raise it there because they are the same. So, again, I understand the need, and Judge Newsom, you brought it up, how to sort of view the sort of legal analysis separate from the factors and facts of a case, but they do get mushed in the sense that if the standard and the only one we submit that is required is weighing positive and negative factors, well, then you're going to look at what's involved in every case, and then once there are criminal factors involved, matter of arise analysis, even if it is different, it doesn't come into play. So aren't you conceding that we have jurisdiction? Sorry. Aren't you conceding that we have jurisdiction because at least superficially it looks like the wrong standard was applied, but then once we get into the merits of this, we see that in the end the correct standard applied? Is that your argument? Our argument is really either way, Your Honor, and this is how we briefed it as well. We do think that there is no jurisdiction because it is not a colorable claim. It is not an actual legal question because it doesn't present some validity. So we would ask to dismiss on that basis, but we also alternatively said if you do feel like it does present a legal question because it is a different legal standard or at least gets past that first step, then it's just not colorable in the sense that these standards are the same. On the jurisdictional side, we've issued two recent opinions. You cite them in the supplemental brief. I think it's Ponce is one of them and Blanco may be another. I can look them up, but you know the ones I'm talking about. And both of those, in citing that we did not have jurisdiction, relied very heavily on the fact that there was a correct citation to the standard. What the courts there said is you're trying to phrase this as we applied the wrong legal standard, but the board cited the right law, and we're not going to assume that they did that, and really what you're doing is dressing this up. And you analogize here that this is really a dressed-up discretionary claim. But here there is a miscitation or at least a citation maybe not to the best possible case for applying the standard. I know you believe and the board believes that this was sort of done generally and that might be right on the merits, but I don't think that we can just point to the citation here and say this was the right standard and this was not there. That's why this seems maybe a little more colorable than the claim in Ponce and the other case from this year where we found no jurisdiction. Screw that, Judge Luck. I think that's a fair characterization of it. Excuse me again. I think I would agree that at best it is not the best citation. This really is, again, matter of areas is the one that's a little bit different because it has that sort of soft presumption that when there are no negative factors. But beyond that, even matter of areas says that where there are negative factors, you do then require unusual and even outstanding equities, and that's exactly what all of the other board decisions that either party here have cited in this appeal. They all stand for that same basic proposition. So, yes, I think those cases are a little bit different because you could say, well, no, the citation was correct. They're here. Yes, it's a different context, and the board has said. We happily concede that the board regularly says it is prudent to avoid cross-pollination and cross-applying, but then the board also cross-applies and cross-pollinates when it constantly cites these different cases in different contexts for the same basic principle that you need to balance positive and negative equities. And if there were any concern that perhaps the citation here suggests that maybe they did consider the wrong things, then I'd go back to, again, what are the right things that you consider? In any one of these analyses, you were looking at the same positive factors of longstanding ties and community relationships and character and the same negative factors of primarily criminal history. And, of course, all of those things were considered here. So look at the board's decision, and you know the right analysis and the right law was applied here because all of those things were considered in detail in both the immigration judge and the board's decision. And if any of that even gave you pause, I would say, Judge Luck, I think you're right that we did benefit from the board's second decision here and from Petitioner having filed the motion to reconsider because, yes, the citation does make you think, is it a matter of a right mostly for adjustment cases? And the board said, no, we cited it for the basic proposition that you're weighing factors here. And the one sort of final point, subject, of course, to any further questions about this panel I would make, is that to sort of underscore what I said before about 212H's standard not being different from 1255I, I think, Judge Luck, you mentioned before in one case in 1255I context or any adjustment context when you're looking at that without a waiver, you don't usually have a criminal history. You don't have a criminal history. And I would submit that's really not the case. What we have here now with the way the board sort of assumed that we're not going to address the waiver and only got to adjustment as a matter of discretion without the criminal waiver, that's not uncommon. That happens pretty often because, as I'm sure this panel knows, sadly, it's very hard with the categorical approach to figure out what specifically triggers admissibility. You look at the Said case and why we're sort of here in the first place not looking at that 212H waiver anymore. It's because of things like marijuana stocks. And I'm sure this panel sadly has addressed isomers at some point. There are a lot of reasons why you would not have a match to an inadmissibility ground or a movability ground. And so you would just go straight to that matter of discretion at the end. I assume we don't see the meritorious cases. So you're right as to the ones we probably see, but I imagine in the scope of all the ones that are seen, most 1255I cases don't have a criminal conviction. In other words, ARIA is- Where they're granted, perhaps. That's right. Where they're granted, right. But then they would have negative factors still, perhaps not criminal. But I would suggest I think even there, again, you're going to see criminal history. It's just ones that don't trigger an admissibility ground. So if there are no other questions, Your Honor, again, we ask that this petition be dismissed or the alternative denied. Thank you very much. Mr. Stoler, let's hear from you on rebuttal. So I'm going to read from the Board's decision, the last one. So we are further unpersuaded by the Respondent's argument that the Board's citation to matter of Mendez indicates we applied the wrong discretionary standard for this application for adjustment of status. In citing to Mendez, it's for the overall- citing the case for the overarching proposition that in evaluating whether a Respondent warrants a favorable exercise of discretion, an adjudicator must balance the adverse factors, evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented on his behalf to determine whether this relief is granted. That's matter of Mendez, not matter of a ride. That section, that sentence right there comes directly out of Mendez. But by the time the Board got this, there was no more waiver needed. So essentially what the Board was saying was, okay, waiver, no waiver, we really don't care. The standards are exactly the same, and it doesn't really depend on which form of relief the person's applying for. Discretion is discretion, and we can safely ignore- Can I ask you a question? Sure. How is that in any substantive difference to- and I'm going to read from matter of ride. Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by showing unusual or even outstanding equities. Generally favorable factors, such as family ties, hardship, length of residence, will be considered as countervailing factors, meriting favorable exercise of administrative discretion. In the absence of adverse factors, adjustment will ordinarily be granted as a matter of discretion. How is the need for countervailing factors meriting favorable exercise of administrative discretion all that different from the statement you read from the order denying reconsideration? For instance, if you're doing a 212- Other than like a word or two. Got it, got it. But when you're doing a 212-H waiver, hardship is an element, statutory element to establishing eligibility. You don't even get to discretion if you don't meet hardship. With matter of a ride, hardship is a discretionary factor. So how do we know that the board is weighing things correctly? When they told us, depending on what you're applying for, we have a different analysis about how we're going to consider our exercise of discretion. So yeah, this case has got some really ugly facts, and even if this one goes back down, we're still going to have a tough time on that. But the idea is that the immigration judge applied the right standard. The board ignored a discussion about it and basically said, well, as a matter of discretion, we're going to deny this without exactly saying that. And then when we got to the motion to reconsider and said, look, there's some problems here with which standard or which case you're citing to. And we have this 212-H issue or 1182-H issue that's now gone away. Well, it doesn't really matter. Matter of Mendez Morales says what we needed to say as like matter of a ride says. It's all the same. So there is no difference between the two of them. We confess no error of law, no error of fact. And this is just the way it is. Well, it makes no sense for the board to tell us the way it's supposed to be if the board's not going to apply the standard that it put in the cases saying the standard that's going to be. There was discretion-guiding precedent decisions that the court provided us in the supplemental briefing request about these. How do we – is there jurisdiction on these to review the both? My time is up. Thank you so much, both of you. That case is submitted. We'll move to the next.